SO ORDERED,

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: May 2, 2014**

**The Order of the Court is set forth below. The docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

   **MARY ALICE HUFFMAN,**                                      **CASE NO. 12-00177-NPO**

   **DEBTOR.**                                                  **CHAPTER 7**

**DEREK A. HENDERSON, AS CHAPTER 7**
**TRUSTEE FOR THE BANKRUPTCY ESTATE OF**
**MARY ALICE HUFFMAN**                                          **PLAINTIFF**

**VS.**                                              **ADV. PROC. NO. 12-00099-NPO**

**LEGAL HELPERS DEBT RESOLUTION, L.L.C.**                       **DEFENDANT**

### MEMORANDUM OPINION AND ORDER ON THE COMPLAINT
### FILED BY THE TRUSTEE—PHASE TWO:  ATTORNEYS' FEES AND COSTS

The liability and damages phase ("Phase One")[1] of the trial of the above-referenced adversary proceeding (the "Adversary") took place on November 20 and 22, 2013.  The claims and responses of the parties are asserted in the Complaint (the "Complaint") (Adv. Dkt. 1)[2] filed by Derek A. Henderson, the chapter 7 trustee (the "Trustee"), and in the Legal Helpers Debt

---

[1] With the consent of the parties, the Court bifurcated the bench trial into the liability and damages phase, and the attorneys' fees and costs phase.

[2] Citations to the record are as follows: (1) citations to docket entries in the Adversary are cited as "(Adv. Dkt. ____)"; and (2) citations to docket entries in the main bankruptcy case, Case No. 12-00177-NPO, are cited as "(Bankr. Dkt. ____)".

Resolution, LLC and Macey, Aleman, Hyslip & Searns's Answer, Defenses, and Affirmative Defenses to Complaint (Adv. Dkt. 39) filed by Legal Helpers Debt Resolution, LLC ("Legal Helpers"). In Phase One of the trial, the Court found that Legal Helpers is a "debt relief agency" within the meaning of 11 U.S.C. § 526[3] and that Legal Helpers failed to provide the debtor, Mary Alice Huffman ("Huffman"), the services it promised her and also misrepresented these services in violation of § 526.[4] The Court awarded the Trustee actual damages of $7,264.75, a civil penalty of $28,000.00, and reasonable attorneys' fees and costs in an amount to be determined at a future hearing. These findings and conclusions were rendered by the Court in the Memorandum Opinion and Order on the Complaint Filed by the Trustee (the "Liability Opinion") (Adv. Dkt. 159).

The second phase ("Phase Two") of the trial on the issue of attorneys' fees and costs took place on April 2, 2014. In Phase Two, the Trustee was represented by Jason Graeber ("Graeber") and Matthew S. Lott ("Lott"); and Legal Helpers was represented by Terry R. Levy. The Court refers to this Opinion as the "Fee Opinion."

As instructed by the Court, the Trustee filed an Application for Approval of Attorneys' Fees & Costs (the "Application") (Adv. Dkt. 164) on February 24, 2014. Attached to the Application are itemizations of Graeber's and Lott's fees and costs, marked as Exhibits A and B, respectively. The Trustee amended Exhibit A to the Application by filing a revised itemization of Graeber's fees and costs (the "Revised Itemization") (Adv. Dkt. 167) on March 10, 2014. The

---

[3] All code sections refer to the U.S. Bankruptcy Code found at Title 11 of the U.S. Code unless noted otherwise.

[4] The Court also found that Legal Helpers received fraudulent transfers during the two-year period before Huffman filed her chapter 7 bankruptcy case.

Revised Itemization differs from Exhibit A in that it adds Graeber's mileage expenses and the hours Graeber expended in preparing for Phase Two of the trial.

Legal Helpers filed the Legal Helpers Debt Resolution, LLC's Response in Opposition to the Trustee's Application for Approval of Attorneys' Fees & Costs (the "Response") (Adv. Dkt. 168) on March 21, 2014. Legal Helpers attached to the Response excerpts from Exhibits A and B to the Application that it contests as unreasonable. The Court refers to these excerpts as "LHDR Exhibits A through H" (Adv. Dkt. 168-1 to 168-8).

The Trustee introduced into evidence at trial, without objection from Legal Helpers, the Supplemental Attorney Fee Petition—Itemization—for Matthew S. Lott and Jason Graeber (the "Supplemental Itemization"). (Tr. Exs. A & B). The Court refers to these trial exhibits as "Trustee Exhibits A and B." These exhibits list in chronological order the time spent by Graeber and Lott, along with a general breakdown of the costs they incurred, and are the operative pleadings on which the Trustee rests his claim for attorneys' fees and costs. Having considered the pleadings as well as the testimony, exhibits, and the arguments of counsel presented at Phase One and Phase Two of the trial, the Court makes the following findings of fact and conclusions of law:[5]

## Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this case pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E),

---

[5] Specifically, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

& (O).[6]  Notice of Phase Two of the trial was proper under the circumstances.

## Facts

The Court recounts only those facts and procedural history that are pertinent to the issue of attorneys' fees and costs.  This Fee Opinion assumes some familiarity with the Court's Liability Opinion.

The Trustee seeks attorneys' fees and expenses of $86,597.36[7] for work performed by Graeber and Lott while serving as the Trustee's counsel in the Adversary. (Tr. Exs. A & B). Before considering the reasonableness of the amounts requested, the Court pauses here to consider the related issue of the Trustee's employment of counsel.

The Court approved the Trustee's employment of "Jason Graeber of David L. Lord & Associates, P.A." pursuant to § 327 in the Order Authorizing Employment of Special Counsel (Bankr. Dkt. 36).  The Court also approved a forty percent (40%) contingency-fee agreement between the Trustee and David L. Lord & Associates, P.A. to pursue the Adversary, as set forth

---

[6] This finding of core jurisdiction is undisputed.  The United States Supreme Court in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), held that bankruptcy courts lack constitutional authority to enter a final judgment on a debtor's state-law, compulsory counterclaim that did not stem from the bankruptcy itself or that would not be resolved by the claims allowance process. The Supreme Court granted a petition for a writ of certiorari in *Executive Benefits Insurance Agency, Inc. v. Arkison (In re Bellingham Insurance Agency, Inc.)*, 702 F.3d 553 (9th Cir. 2012), *cert. granted*, 133 S. Ct. 2880 (2013), to consider whether bankruptcy courts lack constitutional authority under *Stern* to enter final judgments in fraudulent conveyance claims against noncreditors.  In the event that a higher court disagrees that this Adversary involves "core" matters and/or otherwise determines that the Court lacks constitutional authority to enter a final judgment, the Court recommends that this Fee Opinion be regarded as its proposed findings of fact and conclusions of law and further recommends that the District Court enter this Fee Opinion as its own after due consideration, in accordance with 28 U.S.C. § 157(c)(1).

[7] $86,597.36 = $82,260.00 + $4,337.36 = ($32,240.00 + $50,020.00) + ($2,722.31 + $1,615.05).  (Tr. Ex. B).  Although Graeber claims $1,435.85 in expenses, the Court finds that the expenses, in fact, total $1,615.05.  (*Id.*).

in the Attorney Retainer Agreement—Contingent Fee (the "Retainer Agreement")[8] (Bankr. Dkt. 32).

At some point before Phase One of the trial, Graeber's employment with David L. Lord & Associates, P.A. ended, and Graeber became a sole practitioner. Then, on July 23, 2013, Lott filed an "Entry of Appearance" as co-counsel with Graeber in the Adversary (Bankr. Dkt. 40). Yet the Trustee has not filed an application seeking approval of the employment of either Graeber as a sole practitioner or Lott. 11 U.S.C. § 327(a); FED. R. BANKR. P. 2014(a).

The Trustee informed the Court at trial that he is obligated contractually to pay attorney's fees and costs only to David L. Lord & Associates, P.A. The services provided by David L. Lord & Associates, P.A., however, are not apparent in any of the billing records presented to the Court, except to the extent those services are reflected in the work performed by Graeber while employed there. The documents before the Court indicate that only Graeber and Lott provided legal services to the Trustee. The Trustee's failure to comply with the procedural requirements of the Code when Graeber's employment with David L. Lord & Associates, P.A. ended, and later when Lott's employment began, has complicated this fee request.

At trial, the Trustee stated that he will file an application seeking authorization of Graber's and Lott's employment with retroactive effect. *See Fanelli v. Hensley (In re Triangle Chems., Inc.)*, 697 F.2d 1280, 1289 (5th Cir. 1983) (holding that bankruptcy courts have power to authorize retroactive employment of counsel under their broad equity powers). The Trustee further represented that he will seek in the same application the Court's approval of an agreement among Graeber, Lott, and David L. Lord & Associates, P.A. as to the division of the fees and costs awarded in the Fee Opinion.

---

[8] The Court's approval of the contingency-fee agreement was preliminary only and not determinative of the reasonableness of the fees pursuant to § 330.

In the interests of judicial economy, the Court will consider the reasonableness of the Trustee's fee request for the services rendered by Graeber and Lott in the Adversary and will reserve for later decision the issues of the *nunc pro tunc* approval of their employment and the proper split of fees and costs among Graeber, Lott, and David L. Lord and Associates, P.A. The Court reserves these issues in large part because Legal Helpers stated at trial that the absence of the Court's approval of Graeber's and Lott's employment was "fixable" by a *nunc pro tunc* order and did not believe it was a valid ground on which to oppose the Trustee's fee request.

Turning to the issue of the reasonableness of the amounts requested, the Supplemental Itemization introduced into evidence at trial reflects that Graeber and Lott charged the Trustee an hourly billing rate of $200.00 and expended a combined 411.30 hours (calculated to a tenth of an hour) litigating the Adversary. (*Id.*). At trial, Legal Helpers stipulated that the hourly billing rate was reasonable and that Graeber and Lott actually performed the work reflected in the Supplemental Itemization. The main issue presented at trial was the reasonableness of the number of hours expended by Graeber and Lott.

The Supplemental Itemization shows that Graeber performed 250.10 hours of work from September 17, 2012 through April 1, 2014, and billed fees of $50,020.00; Lott completed 161.20 hours of work from July 21, 2013 through April 2, 2014, and billed fees of $32,240.00. The Supplemental Itemization also includes expenses of $1,615.05[9] incurred by Graeber, and $2,722.31, by Lott. In total, the Trustee is seeking reimbursement of $82,260.00 in attorneys' fees and $4,337.36 in costs, or $86,597.36 in both attorneys' fees and costs.

---

[9] *See supra* note 7.

**Discussion**

**A.     Attorneys' Fees**

Section 526(a)(2) authorizes courts to award reasonable attorneys' fees and costs if a debt relief agency is found to have committed certain acts or omissions proscribed by the statute. 4 COLLIER ON BANKRUPTCY ¶ 526.04[2] (16th ed. 2013).  There is no provision in § 526 that sets forth how such fee awards are to be calculated.   In the bankruptcy arena, courts use the "lodestar" method, described by the U.S. Supreme Court as the "guiding light of our fee-shifting jurisprudence."  *Perdue v. Kenny ex rel. Winn*, 559 U.S. 542 (2010) (citation omitted).

The first step of the lodestar method is to determine the "lodestar," which is calculated by multiplying the prevailing hourly rate in the community by the number of hours that an attorney reasonably would expend litigating the matter.  *Black v. SettlePou, P.C.,* 732 F.3d 492, 502 (5th Cir. 2013).  The resulting lodestar figure is presumed to represent a reasonable fee.  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).  The party seeking recovery of fees bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

In the bankruptcy context, the Court may adjust the resulting lodestar fee based on the relative weights of the twelve (12) factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989); s*ee CRG Partners Grp., LLC v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 652 (5th Cir. 2012) (holding that U.S. Supreme Court's decision in *Perdue* did not overrule framework applying *Johnson* factors in bankruptcy context).  The *Johnson* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the  skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the

client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19.  The adjustment of the lodestar fee is reserved for exceptional cases.  *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *Black*, 732 F.3d at 502.

### 1.   Reasonable Hourly Rate

Legal Helpers does not dispute the reasonableness of the $200.00 hourly billing rate charged by Graeber and Lott.  The Mississippi Bar's Online Lawyer Directory, a source for obtaining current information on Mississippi attorneys, confirms that Graeber was admitted to practice law in Mississippi in 2003, and Lott, in 2002.  Based on the evidence presented at trial and the realm of fees awarded in other cases in this judicial district, the Court finds that $200.00 is a reasonable hourly rate in this legal community for attorneys of their experience and qualifications.  *See, e.g., United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06CV433, 2014 WL 691500 (S.D. Miss. Feb. 21, 2014) (approving hourly billing rates ranging from $262.00 to $400.00).

### 2.   Hours Reasonably Expended

Legal Helpers challenges the amount of attorneys' fees sought by the Trustee on the ground that Graeber and Lott spent an unreasonable number of hours litigating the Adversary. Legal Helpers opposes the Trustee's fee request based on concepts of "billing judgment" and "block billing," which the Court addresses in turn.

### a.   Billing Judgment

In support of its contention that the Court should reduce or eliminate hours in the Supplemental Itemization, Legal Helpers makes the following arguments:  (1) the fees requested ($82,260.00) are disproportionate to the amount of damages awarded the Trustee in the

Adversary ($7,264.75) and, therefore, are unreasonable *per se* (Resp. ¶¶ 3-4); (2) Graeber and Lott should not recover any fees for the time they spent unsuccessfully pursuing the Plaintiff's Motion for Partial Summary Judgment (the "Trustee Summary Judgment Motion") (Adv. Dkt. 104) (Resp. ¶ 7); (3) some of the time entries in the billing records contain "scanty"[10] or incomplete descriptions of the tasks performed and should be reduced (Resp. ¶ 5); (4) Graeber and Lott provided unnecessary or duplicative services (Resp. ¶¶ 8-10); (5) Graeber and Lott should not recover fees for non-legal work that should have been delegated to support staff (Resp. ¶ 11); and (6) Graeber and Lott should not recover fees for all of their non-working travel time (Resp. ¶ 12).

"[P]laintiffs are charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) (citation omitted). "Billing judgment requires documentation of the hours charged and the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (footnote omitted). "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)). As the U.S. Supreme Court explained:

> Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

---

[10] The term "scanty" is Legal Helpers' chosen description of the time entries.  (Resp. ¶ 5).

*Id.* If evidence of billing judgment is not provided, a fee award should be reduced accordingly "by a percentage intended to substitute for the exercise of billing judgment." *Saizan*, 448 F.3d at 799 (footnote omitted).

### 1.     Proportionality

Legal Helpers contends that Graeber and Lott failed to exercise billing judgment with respect to the time they spent in pursuing the Adversary (411.30 hours), given that they only recovered $7,264.75, a modest amount in actual damages. (Resp. ¶ 2). Stated another way, Legal Helpers contends the requested attorneys' fees are unreasonable *per se* because they are disproportionate to the actual damages awarded the Trustee in the Adversary. In an attempt to demonstrate its point further, Legal Helpers compares the requested final judgment amount of $121,862.11 (consisting of $7,264.75 in actual damages, $28,000.00 in a civil penalty, and $86,597.36 in attorneys' fees and costs) to the $38,991.30 in unsecured debt, as shown in Schedule F of Huffman's bankruptcy schedules. (Bankr. Dkt. 3 at 10-11). In this comparison, the attorneys' fees and costs are much greater than the total unsecured debt.

Legal Helpers also compares the proposed final judgment amount of $121,862.11 to the fees the Trustee agreed to pay David L. Lord & Associates, P.A. in the Retainer Agreement. The Retainer Agreement provides for compensation "on an [sic] contingency fee basis in the amount of forty percent (40%) of all Monetary Recovery (as herein defined)." (Bankr. Dkt. 32 at 5). The term "Monetary Recovery" is defined in the Retainer Agreement to "include any and all statutory damages, actual damages, and punitive damages received; *and any and all Attorneys* [sic] *fees and cost recovery awarded by the court* or obtained via settlement." (*Id.*) (emphasis added). Applying this formula, the Trustee would be obligated to pay attorneys' fees and costs of forty percent (40%) of the requested final judgment amount of $121,862.11, which is only

$48,744.84,[11] considerably less than the attorneys' fees and costs requested by the Trustee. Thus, if the Court were to enter a final judgment of $121,862.11, Huffman would receive a windfall of $73,117.27,[12] according to Legal Helpers.

The proportionality argument advanced by Legal Helpers (that the Court should limit the Trustee's attorneys' fees to a percentage of the damages award) has been rejected by the U.S. Supreme Court in the context of civil rights claims. *See City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). The Supreme Court has ruled consistently since *Riverside* that limiting attorney's fees to a percentage of the damages award undermines the purpose of fee-shifting statutes like 42 U.S.C. § 1988. *See, e.g., Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) ("The aim of [fee-shifting] statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws.").

Legal Helpers' argument regarding proportionality carries some weight in the context of private litigation because a private litigant generally will consider whether an investment in legal fees is reasonable in light of the expected result, and a lawyer pursuing litigation on behalf of a private litigant generally will exercise billing judgment by reducing fees for legal services when the results achieved are of relatively little value. A litigant in a civil rights case, however, acts as a "private attorney general." *See Newman v. Piggie Park Enters.*, 390 U.S. 400 (1968). Because civil rights litigation benefits more people than just the plaintiff, the Supreme Court has held that

---

[11] $48,744.84 = $121,862.11 \times 0.40$.

[12] $73,117.27 = $121,862.11 - $48,744.84$.

the proportionality rule has no place in determining the reasonableness of an award of attorney's fees.

The attorney's fee provision in § 526(a) serves a purpose similar to the fee-shifting provisions in federal consumer protection laws outside the bankruptcy arena[13] in that § 526 was intended to protect consumer debtors from abusive practices of debt relief agencies. *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229 (2010). Section 526 imposes certain restrictions on the conduct of "debt relief agencies" and provides sanctions and remedies when a debt relief agency "intentionally or negligently" fails to comply with its requirements. The Code defines a debt relief agency as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration." 11 U.S.C. § 101(12A). An assisted person is defined as "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $186,825." 11 U.S.C. § 101(3) (footnote omitted). The concerns about the debt relief industry that § 526 attempts to address were discussed at length by the Supreme Court in *Milavetz* and by this Court in the Liability Opinion.

Based on the reasoning espoused in *Rivera*, the Court concludes that the alleged disproportion between the requested attorneys' fees and the damages award does not render the fees "unreasonable" *per se*. The purpose of the fee-shifting provision in § 526 is to allow a debtor to pursue claims against a debt relief agency even if it would not otherwise be cost-

---

[13] *Marek v. Chesny*, 473 U.S. 1, 44-48 (1985) (Brennan, J., dissenting) (listing statutes). This common purpose is apparent in the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, which was enacted to "eliminate abusive debt collection practices by debt collectors" and the Fair Credit Reporting Act, 15 U.S.C. § 1681, which was enacted to "insure that consumer reporting agencies exercise their grave responsibilities with fairness."

effective from the perspective of the debtor's own recovery. In other words, there was more at stake in the Adversary than the money Huffman paid Legal Helpers for its debt relief services.

The Court likewise rejects Legal Helpers' contention that the Retainer Agreement imposes an automatic ceiling on the Trustee's attorneys' fees. If the Retainer Agreement provides less than the "reasonable attorney's fees and costs" allowed under § 526, which is what Legal Helpers suggests, then the Court finds that the difference should not inure to Legal Helpers' benefit, which is what Legal Helpers asks the Court to do. *See Blanchard*, 489 U.S. at 90 (holding that plaintiff's contingent-fee arrangement with his counsel did not set automatic limit on attorneys' fees awarded under 42 U.S.C. § 1988). The opposite result is also true. If the Retainer Agreement provided more than the "reasonable attorney's fees and costs" allowed under § 526, the Court would similarly find that the difference should not prejudice Legal Helpers.

Regardless, the Court finds that the requested attorneys' fees in the Adversary are reasonably proportional to the damages awarded in the Adversary. Although the fees greatly exceed the damages, the Trustee did not create this disparity. Rather, a review of the docket shows that Legal Helpers itself caused most of the protracted, pre-trial litigation. This fact is demonstrated by the number of pre-trial motions filed by Legal Helpers, which included: (1) the Defendants Motion for [sic] to Dismiss for Lack of Personal Jurisdiction (the "Dismissal Motion") (Adv. Dkt. 17); (2) the Defendants Motion for [sic] to Compel Barry's[14] [sic] Claims to Arbitration Pursuant to the Federal Arbitration Act and to Stay Pending Arbitration (the "Motion to Compel Arbitration") (Adv. Dkt. 15); (3) the Motion for Judgment on the Pleadings (the

---

[14] The rush to file this pre-trial motion is shown by Legal Helpers' clerical error in naming "Barry" rather than "Huffman" in the caption. There is no known "Barry" in the Adversary or in the main bankruptcy case.

"Motion for Judgment on the Pleadings") (Adv. Dkt. 64); and (4) the Legal Helpers Debt Resolution, LLC's Motion for Summary Judgment (the "Legal Helpers Summary Judgment Motion") (Adv. Dkt. 98).

Legal Helpers filed the Dismissal Motion on November 14, 2012.  "After considering and analyzing the applicability of Federal Bankruptcy Rule 7004(f)," Legal Helpers voluntarily withdrew the Dismissal Motion on December 5, 2012.  (Adv. Dkt. 29).  The Court entered the Order Granting Defendant's Motion to Withdraw (Adv. Dkt. 30) on December 11, 2012.

On the same date it filed the Dismissal Motion, Legal Helpers filed the Motion to Compel Arbitration.  The Court denied the Motion to Compel Arbitration in the Memorandum Opinion and Order Denying Motion to Compel Arbitration and to Stay Adversary Proceeding Pending Arbitration (Adv. Dkt. 37) rendered on February 6, 2013.  Legal Helpers then filed an appeal on February 20, 2013 (Adv. Dkt. 44), which it voluntarily dismissed less than a month later on March 13, 2013.  (Adv. Dkt. 56).

Next, on April 10, 2013, Legal Helpers filed the Motion for Judgment on the Pleadings asking the Court to dismiss the following claims against Legal Helpers:  (1) the turnover claim (Count I); (2) the accounting claim (Count III); and (3) the fraud claim (Count V).  On June 10, 2013, the Court entered the Memorandum Opinion and Order on Motion for Judgment on the Pleadings (the "Rule 7012(c) Opinion") (Adv. Dkt. 75) in which the Court denied in part and granted in part the Motion for Judgment on the Pleadings.  Legal Helpers prevailed only as to the Trustee's turnover claim with respect to the fees and expenses paid by Huffman.  (*Id.*).

Then, on September 4, 2013, Legal Helpers filed the Legal Helpers Summary Judgment Motion requesting judgment as a matter of law on the following claims:  (1) the turnover claim (Count I); (2) the fraudulent transfer claim (Count II); (3) the accounting claim (Count III); (4)

the claim under § 526 (Count IV); and (5) the fraud claim (Count V).  Legal Helpers filed the Legal Helpers Summary Judgment Motion only five (5) months after filing the Motion for Judgment on the Pleadings.  Notably, there is considerable overlap between the two dispositive motions, and Legal Helpers revisits some of the same arguments previously rejected by the Court in the Rule 7012(c) Opinion.  The Court denied Legal Helpers Summary Judgment Motion in the Memorandum Opinion and Order Denying Legal Helpers Debt Resolution, LLC's Motion for Summary Judgment and the Plaintiff's Motion for Partial Summary Judgment (the "Summary Judgment Opinion") (Adv. Dkt. 118).

These pre-trial motions and related exhibits, briefs, and replies filed by Legal Helpers totaled 429 pages and prompted the Trustee to file responses, exhibits, and briefs that totaled 408 pages.  As a result, the Court issued three opinions totaling 77 pages (Adv. Dkts. 37, 75, & 118).

There was also a discovery dispute that required the Trustee to file an Amended Motion to Compel Discovery (the "Amended Discovery Motion") (Adv. Dkt. 88).  The Trustee sought an order compelling Legal Helpers to produce documents regarding the amount and method of compensation it received from Huffman and a list of its Mississippi clients.  Legal Helpers filed a response that included 140 pages of exhibits (Adv. Dkt. 93).  The Court granted in part and denied in part the Amended Discovery Motion, instructing Legal Helpers to produce a list of each Mississippi customer or client that it has assisted or represented.  (Adv. Dkt. 97).

Given the amount in controversy, Legal Helpers did not serve its own interests well in generating so many pre-trial motions and in failing to resolve a discovery issue that should not have required the Court's intervention.  It is disingenuous of Legal Helpers to posit a proportionality argument when Legal Helpers' pre-trial strategy was to defend the litigation at

every turn. Even at this late date, Legal Helpers' zeal continues in its challenge to the fees and costs requested by the Trustee.

### 2.  Success on the Merits

Legal Helpers complains that the requested attorneys' fees should be reduced by the time spent by Graeber and Lott in preparing and drafting the Trustee Summary Judgment Motion, which the Court denied in the Summary Judgment Opinion.  According to Legal Helpers, Graeber and Lott expended sixty (60) hours over four (4) months preparing the Trustee Summary Judgment Motion and related briefs on which the Trustee did not prevail.  Legal Helpers cites *Walker v. U.S. Dept. of Housing & Urban Dev.*, 99 F.3d 761 (5th Cir. 1996), for its holding that attorneys may not bill "for time on issues on which they do not prevail." *Id.* at 769.

The Trustee requested summary judgment on his claims under § 526 (Count IV), asserting that the undisputed facts established as a matter of law that Legal Helpers violated § 526(a)(1) by failing to perform promised services and § 526(a)(3) by misrepresenting the services it would provide (Adv. Dkt. 105 at 3).  In the Summary Judgment Opinion, the Court denied the Trustee Summary Judgment Motion for the same reasons it denied the Legal Helpers Summary Judgment Motion:  "[g]iven the large number of exhibits submitted by the parties and the credibility determinations that must be resolved, the Court exercises its discretion under Rule 56(a) . . . so that a fuller development of the record may be presented at trial."  (*Id.*).  The Court also ruled, in the alternative, "there are genuine issues of disputed fact and the parties have failed to show that they are entitled to judgment as a matter of law."  (*Id.*).

Here, § 526 does not contain the same "prevailing party" language that civil rights fee-shifting statutes like 42 U.S.C. § 1988[15] contain. The only statutory requirement for an award of reasonable attorneys' fees under § 526 is that the debt relief agency fail to comply with the provisions of § 526 intentionally or negligently. *Hensley*, 461 U.S. at 435.

 Moreover, even if the Trustee's "prevailing party" status was a proper issue for consideration under § 526, the Court rejects Legal Helpers' measure of the Trustee Summary Judgment Motion as unsuccessful. Although the Court denied the Trustee Summary Judgment Motion, the Trustee ultimately prevailed on the merits of his § 526 claim.

### 3.    "Scanty" or Incomplete Time Entries

Legal Helpers complains that certain time entries in the Supplemental Itemization are "scanty" and should be reduced because they fail to explain why the tasks were necessary. (Resp. ¶ 5; Adv. Dkt. 168-1). In its Response, Legal Helpers points to these time entries: "tp with Huffman," "email to derek," "left message for Huffman," "review discovery," "tp with matt," "email to matt lott," "email info to matt," "analyze case—pro-con," and "tp with derek henderson." (LHDR. Ex. A). Graeber admitted at trial that some of his times entries lacked detail, a shortcoming he attributed to his lack of experience.

The Court finds that the disputed time entries are not a model of clarity or specificity. When read singularly, some of the time entries appear to fall short of the standard necessary for the Court to understand the nature of the services provided and allow a meaningful review of the hours spent, but when read contextually, the Court finds that they satisfy the Trustee's burden of proof. The most important part of that context is that Graeber and Lott worked on no other

---

[15] The Civil Rights Attorney's Fees Awards Act provides that "the court, in its discretion, may allow the *prevailing* party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (emphasis added).

litigation for the Trustee. There is thus no risk that they charged the Trustee for services unrelated to the Adversary. Why else would Graeber call Huffman on April 15, 2013, except to discuss her upcoming deposition in the Adversary? (LHDR Ex. A). The entries immediately after the telephone call with Huffman justifies the conclusion that the call was necessary and related to the Adversary.

The Court agrees with Legal Helpers that billing records should be maintained in a manner that will enable the Court to determine the nature of the services provided. The Court disapproves of generic language in billing records of the type identified by Legal Helpers. When considered in their proper context, the time entries are not so vague as to persuade the Court to exclude them from the total time expended.

### 4.    Duplicate Efforts

Legal Helpers questions why Graeber spent 3.6 hours on August 22, 2013 and August 28, 2013 "prep[ping]" for a deposition conducted by Lott, not Graeber. (Resp. ¶ 8). Legal Helpers also questions why both Graeber and Lott attended the hearing on August 26, 2013, billing a combined 7.6 hours, and the hearing on November 6, 2013, billing a combined 3.6 hours. These times entries, according to Legal Helpers, are duplicative and should be reduced. Legal Helpers also contests numerous time entries on the ground that Graeber and Lott appeared to have billed for the same tasks. *Watkins*, 7 F.3d at 458; *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982).

The Court finds that any hours that are duplicative should be excluded from consideration of hours reasonably expended. *League of United Latin Am. Citizens, #4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized.

The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted." *Johnson*, 488 F.2d at 717.

Graeber explained at trial that he and Lott divided the tasks between them in that Graeber provided expertise in bankruptcy law, whereas Lott provided expertise in general litigation. The Court finds that the time entries reflect that Graeber and Lott separated the work they performed. For example, on August 28, 2013 and August 29, 2013, Lott expended 7.5 hours preparing for, and conducting, a deposition. On August 22, 2013 and August 28, 2013, Graeber expended 3.6 hours preparing for the same deposition, including an "email to Matt" Lott. Although these entries show that they both worked on the same matter, the amount of hours each billed demonstrates that this was a collaborative process. Lott was primarily responsible for deposing the witness, as reflected in the relatively large amount of time he spent; and Graeber only assisted his co-counsel in preparing for the deposition, as reflected in the relatively low number of hours he spent.

The Court concludes that the attendance of both Graeber and Lott at the hearings on August 26, 2013 and November 6, 2013 was reasonable under the circumstances. The Court reaches this conclusion based on the nature and complexity of the issues involved at these hearings. The Court also notes that these hearings appear to be the only courtroom appearances made by the two Trustee attorneys, Graeber and Lott, where they were not outnumbered by opposing counsel. The docket shows that Legal Helpers is represented currently by five (5) attorneys and that a total of seven (7) attorneys from three different law firms in Mississippi, Illinois, and Florida have made appearances in the Adversary on behalf of Legal Helpers. This tally of Legal Helpers' attorneys does not include its general counsel in Colorado.

In sum, the Court finds that Graeber and Lott were not performing the exact same services.  Consequently, the Court will not reduce any time for duplicate work.

### 5.     Non-legal Work

In its Response, Legal Helpers contends that Graeber and Lott inappropriately seek recovery of fees for non-legal work.  (Resp. ¶ 11).  Legal Helpers challenges the time they spent "obtaining or filing pleadings, phone calls for scheduling purposes, bate labeling, and assembly of exhibit binders."  (*Id.*; LHDR Ex. F).  Legal Helpers argues that the hours spent performing those tasks are not recoverable because they are clerical in nature.

The Court finds that legal tasks that require an attorney's skill should be distinguished from tasks that could be accomplished by a paralegal or other clerical staff.  "[The] dollar value [of work performed] is not enhanced just because a lawyer does it*."  Mo. v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (quoting *Johnson*, 488 F.2d at 714).  But the Court rejects the argument of Legal Helpers that no fees are recoverable at any billing rate for non-legal work.

Clerical work performed by an attorney is compensable at an hourly rate that is lower than the attorney's.  *Cruz v. Hauck*, 762 F.2d 1230, 1235 (5th Cir. 1985) (holding that "[a] finding that some of the hours claimed were for clerical work . . . does not . . . justify complete denial of the fee request").

Here, some of the entries indicate that Graeber and Lott spent part of their time scheduling depositions, making arrangements with court reporters, and filing pleadings.  Graeber explained at trial that he and Lott are sole practitioners, they have limited clerical staff, and they sometimes perform non-legal services because no other help is available.  Accordingly, the Court will allow hours spent on non-legal work, but at the reduced billing rate of a paralegal in the relevant legal community.

With respect to the number of hours spent on non-legal work, the Court finds that some of the disputed time entries in Exhibit F include tasks for legal services.  For example, the Court disagrees with Legal Helpers' characterization of Graeber's telephone calls to Huffman on April 15, 2013 and July 12, 2013 as clerical work.  (LHDR Ex. F at 2 & 3).  On the other hand, the Court notes that Lott's time entry on November 15, 2013 for 7.2 hours of "[put]ting together exhibit books for trial" clearly describes non-legal work, although the time entry contains the statement, "secretary times excluded."  (Tr. Ex. B).  The recitation that "secretary times [are] excluded" does not alone transform clerical work into legal work.  (*Id*.).  If a billing attorney believes a description in a time entry is so inadequate that it requires an annotation explaining that the nature of the services is not what it appears to be, then the proper remedy is to revise the description to provide a better explanation.  Accordingly, the Court treats the 7.2 hours Lott billed on November 15, 2013 as time expended on non-legal services.

With respect to determining the reduced hourly rate for non-legal work, the Court finds guidance from courts in this judicial district that have found a range of $75.00 to $124.00 to constitute a reasonable hourly rate for paralegal work.  *See Rigsby*, 2014 WL 691500, at *17 (applying paralegal hourly rate of $124.00); *Trout Point Lodge Ltd. v. Handshoe*, No. 1:12CV90, 2013 WL 6524650, *7 (S.D. Miss. Dec. 11, 2013) (applying paralegal hourly rate of $75.00).  The reductions in the hourly rate for time spent performing non-legal work, as determined by the Court from its review of Exhibit F and the Supplemental Itemization, are reflected as follows:

**Jason Graeber**

| Date | Description | Hours Reasonably Expended | Reasonable Hourly Rate | Lodestar |
|------|-------------|---------------------------|------------------------|----------|
| 05-15-2013 | called ola to cancel depo – semt [sic] email | 0.1 | $100.00 | $10.00 |
| 06-26-2013 | schedule depo of huffman with Court reporter and location<br>email to derek henderson<br>call to wooten reporting . . .<br>aw reporting<br>call to edwards reporting . . .<br>Americas Best Value Hotel (Hazelhurts) [sic] . . .<br>steve amos in hazelhurst courthouse . . . | 1.0 | $100.00 | $100.00 |
| 07-02-2013 | email to sherri at edward reporting call to sherri – depo | 0.1 | $100.00 | $10.00 |
| 08-30-2013 | bates stamp discovery supp 0068-0095 | 0.2 | $100.00 | $20.00 |
| 11-08-2013 | prep for trial trial [sic] notebook call to huber witness?<br>email to jenkins – witness<br>call to huber witness? | 2.9 | $100.00 | $290.00 |

**Matthew Lott**

| Date | Description | Hours Reasonably Expended | Reasonable Hourly Rate | Lodestar |
|------|-------------|---------------------------|------------------------|----------|
| 7/23/13 | Enter appearance in case | 0.2 | $100.00 | $20.00 |
| 9/12/13 | File response to MSJ | 0.5 | $100.00 | $50.00 |
| 10/30/13 | Prepare and file subpoenas to trial for Hyslip, Aleman, Macey and Searns | 1.1 | $100.00 | $110.00 |

| 11/13/13 | Prepare and file certificate of service for Hyslip, Macey and Aleman, Windsor subpoenas | 0.5 | $100.00 | $50.00 |
| 11/15/13 | Put together exhibit books for trial – secretary times excluded | 7.2 | $100.00 | $720.00 |

In sum, the Court finds that the attorney's fees of Graeber should be reduced by $430.00[16] to reflect the billing rate of non-legal work at $100.00 per hour. The Court also finds that the attorney's fees of Lott should be reduced by $950.00[17] for the same reason.

### 6.  Travel Time

Graeber and Lott billed their travel time at their full hourly rate of $200.00.[18] (Resp. ¶ 12; LHDR Ex. G). Legal Helpers contends that they should recover only half of their non-working travel time. Legal Helpers cites *Baker v. Washington Mutual Finance Group, LLC*, No. 04CV137, 2007 WL 571103, at *12 (S.D. Miss. Feb. 20, 2007) in support of its challenge to the full recovery of travel time.

The Court agrees with Legal Helpers that travel time generally is compensable at fifty percent (50%) of the attorney's hourly rate. *Watkins*, 7 F.3d at 459; *Smith v. Walthall Cnty.*, 157 F.R.D. 388, 393 (S.D. Miss. 1994). There is an exception when the evidence shows that an attorney has performed work while traveling, but neither Graber nor Lott provided any documentation at trial showing that they worked on the Adversary while traveling from the

---

[16] $430.00 = $100.00 × 4.3 hours.

[17] $950.00 = $100.00 × 9.5 hours.

[18] Legal Helpers alleges in the Response that Graeber and Lott billed approximately thirty (30) hours in travel time, but the Courts finds that the entries in Exhibit G total, in fact, 40.7 hours of travel time.

Mississippi Gulf Coast to the Bankruptcy Courtroom in Jackson or to Huffman's residence in Hazelhurst, Mississippi.  The Court, therefore, finds that their hourly rate for travel time should be reduced by fifty percent (50%).  In that regard, the Court further finds that six (6) is a reasonable number of hours spent traveling, round-trip, to the Bankruptcy Courtroom and Hazelhurst.  The Court applies this number of hours in calculating the reduction in fees for non-working travel time unless Graeber or Lott billed fewer hours for the trip, in which event the Court used the number provided by Graeber and/or Lott.  The reductions are shown below:

| Jason Graeber | | | | |
|---|---|---|---|---|
| Date | Description | Hours Reasonably Expended | Reasonable Hourly Rate | Lodestar |
| 01-11-2013 | drive to Jackson drive to gulfport | 6.0 | $100.00 | $600.00 |
| 06-24-2013 | travel to jackson for hearing/ . . . /return to the coast | 6.0 | $100.00 | $600.00 |
| 07-15-2013 | travel to hazlehurst [sic] travel to the coast | 6.0 | $100.00 | $600.00 |
| 08-26-2013 | travel to hearing | 6.0 | $100.00 | $600.00 |
| 09-27-2013 | travel to jackson for hearing | 3.0 | $100.00 | $300.00 |
| 11-19-2013 | travel to Jackson | 3.0 | $100.00 | $300.00 |

| Matthew Lott | | | | |
|---|---|---|---|---|
| Date | Description | Hours Reasonably Expended | Reasonable Hourly Rate | Lodestar |
| 08-26-2013 | Travel to/from Jackson from Pascagoula | 6.0 | $100.00 | $600.00 |
| 11-19-2013 | Travel to Jackson for trial | 3.0 | $100.00 | $300.00 |

| 11-20-2013 | Travel to Hazelhurst, MS and pick up mrs. Huffman, take her home | 1.2 | $100.00 | $120.00 |
|---|---|---|---|---|

Finally, the Court's independent review of the time entries discloses that on December 5, 2013, Lott billed travel time from his office in Pascagoula, Mississippi to Graeber's office in Biloxi, Mississippi. (Tr. Ex. A at 4). Because travel between offices of co-counsel generally is not compensable, the Court eliminates from Lott's cumulative total hours 0.5 hours, which is an estimate of the travel time between Pascagoula and Biloxi. The Court's findings result in reductions of $3,000.00 in fees billed by Graeber in travel time, and $1,120.00 in fees billed by Lott in travel time.

### b.    Block Billing

Legal Helpers next argues that Graeber and Lott engaged in impermissible "block billing." (Resp. ¶ 6; LHDR Ex. B). "Block billing" is a "time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Harris v. Allstate Ins. Co.*, No. 07-8789, 2009 WL 86673, at *3 (E.D. La. Jan. 19, 2012) (collecting cases). The act of "block billing" impedes a court's ability to determine the reasonableness of the hours spent on individual tasks and has served as the basis for reducing an award of attorney's fees by a specific percentage. *Id.* Here, Legal Helpers asks the Court to reduce the time spent by Graeber and Lott by at least fifty percent (50%). (LHDR Ex. A). In support of its argument, Legal Helpers cites this Court's opinion in *Burns v. Home Zone Sales & Lease Purchase, LLC (In re Burns)*, 503 B.R. 666 (Bankr. S.D. Miss. 2013). There, the Court reduced time entries that contained block billing by fifty percent (50 %). *Id.* at 678.

As a preliminary matter, the Court notes that block billing on fee statements violates the U.S. Trustee's Fee Guidelines. *See* Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330, 28 C.F.R. pt. 58, App. A. Although these guidelines are not binding on this Court, they provide assistance to the Court in its review of the time entries contested by Legal Helpers. In particular, the U.S. Trustee Guidelines state:

> Time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour. Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry; however, tasks performed in a project which total a *de minimis* amount of time can be combined or lumped together if they do not exceed .5 hours on a daily aggregate.

28 C.F.R. pt. 58, App. A.

The Court finds that many of the time entries challenged by Legal Helpers describe tasks that total a *de minimis* amount of time. For example, on September 17, 2012, Graeber billed 0.5 hours for the following tasks: "draft complaint/pull pacer docs." (LHDR Ex. B at 1). The alleged block billing in time entries such as this one does not justify a reduction of the time spent.

As to the other time entries disputed by Legal Helpers, the Court finds that no adjustment is warranted because the total time spent on the multiple tasks appears reasonable. This finding distinguishes this matter from *Home Zone*. The debtor's attorney in *Home Zone* used pleadings he filed previously in a separate adversary proceeding involving the same issue as templates for the pleadings he filed in *Home Zone*. *Home Zone*, 503 B.R. at 677. At least one of the documents he filed in *Home Zone* mistakenly named the defendant in the unrelated case. *Id.* Yet his time entries for drafting the complaint and discovery requests, including the document that

identified the wrong defendant, totaled 8.0 hours. *Id.* The Court found that 8.0 hours was an unreasonable amount of time to spend drafting pleadings from templates.

Although the time entries challenged by Legal Helpers in this matter do not clearly break down all the tasks performed, they do not result in an unreasonable number of hours. In short, the Court finds that Graeber and Lott did not engage in block billing to such an extent as to warrant a reduction in their fees.

### 3. *Johnson* Factors

The Trustee did not request an upward adjustment to the lodestar fee based on the twelve *Johnson* factors. *See CRG Partners Grp., LLC v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 652 (5th Cir. 2012) (holding that U.S. Supreme Court's decision in *Perdue* did not overrule framework applying *Johnson* factors). The Court has considered the novelty and difficulty of the issues presented and the "undesirability" of the matter and concludes that no adjustment is justified. The Court, however, acknowledges that the § 526 issue involved relatively new questions of law and that the Adversary was not a routine proceeding.

There is a strong presumption that the calculated "lodestar" amount is a reasonable fee. *Saizan*, 448 F.3d at 800. The Court finds that no specific evidence has been provided that shows the Adversary is one of those exceptional cases where an adjustment to the "lodestar" fee is appropriate. Therefore, the Court finds the calculated "lodestar" amount is reasonable, fair, and appropriate.

### B. Costs

The Supplemental Itemization shows that Graeber and Lott incurred $4,337.36 in costs and expenses in the Adversary for filing fees, mileage, copying charges, hotel bills, out-of-town meals, witness fees, and parking fees. Out-of-pocket expenses that are ordinarily charged to fee-

paying clients are recoverable. *See Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374 (5th Cir. 1990) (noting type of expenses recoverable under 42 U.S.C. § 1988). Graeber and Lott have submitted documentation of some of these expenses. (Tr. Exs. A & B). Legal Helpers does not contest the reasonableness of these expenses, and the Court finds that the total amount of $4,337.36 is reasonable.[19]

### Conclusion

Accordingly, the Trustee's request for attorneys' fees and costs, as set forth in the Application, the Revised Itemization, and the Supplemental Itemization, is granted in part and denied in part. After reducing the hours for non-working travel time and reducing the hourly billing rate for non-legal work, the Court finds that the Trustee is entitled to a total of $76,760.00[20] in attorneys' fees and $4,337.36 in costs for payment of the work performed by Graeber and Lott. These amounts are in addition to the $35,264.75 awarded in the Liability Opinion.

A separate final judgment will not be entered until the Court resolves the issues of the *nunc pro tunc* approval of the Trustee's employment of Graeber and Lott in the Adversary and the division of the fees and costs among Graeber, Lott, and David L. Lord & Associates, P.A. In that regard, the Court instructs the Trustee to file an application seeking approval *nunc pro tunc* of the employment of Graeber and Lott as special counsel in the prosecution of the Adversary and of the proposed division of fees and costs among the two attorneys and the law firm within fourteen (14) days of the Fee Opinion.

---

[19] Some of these expenses may also fit within the definition of "costs" under Rule 7054(b) and 28 U.S.C. § 1920. In the event the Trustee files a bill of costs, he may list only those costs that are not awarded here.

[20] $76,760.00 = $82,260.00 - $5,500.00 in fee reductions.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Trustee is entitled to recover from Legal Helpers reasonable attorneys' fees of $76,760.00 and costs of $4,337.36 for payment of the work performed by Graeber and Lott.

IT IS FURTHER ORDERED AND ADJUDGED that the Trustee shall file an application seeking approval *nunc pro tunc* of the employment of Graeber and Lott as special counsel in the prosecution of the Adversary in accordance with § 327 within fourteen (14) days of the Fee Opinion.

IT IS FURTHER ORDERED AND ADJUDGED that the Trustee shall file an application or other pleading setting forth the proposed arrangement for the division of the attorneys' fees and costs awarded in this Fee Opinion among Graeber, Lott, and David L. Lord & Associates, P.A. within fourteen (14) days of the Fee Opinion.  The application shall include an affidavit or declaration from David L. Lord & Associates, P.A. indicating an agreement to the proposed division of fees and costs.

##END OF OPINION##